T.C. Memo. 2008-237

UNITED STATES TAX COURT

WEST COVINA MOTORS, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4802-04.                    Filed October 27, 2008.

<u>Steven Ray Mather</u>, for petitioner.

<u>Alan Cooper</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $380,652 deficiency in petitioner's Federal income tax for 1999 and a $415,073 deficiency for 2000.  Respondent also determined a $54,880

accuracy-related penalty under section 6662[1] for 1999 and a $63,548 penalty for 2000.

After concessions,[2] we are left to decide five issues. We first decide whether petitioner may deduct legal expenses it incurred in the bankruptcy of its landlord, Hassen Imports Partnership (HIP) for 1999 and 2000 (the years at issue). We find that petitioner may not deduct these expenses. The second issue is whether petitioner may deduct legal expenses related to the purchase of Clippinger Chevrolet (Clippinger) for the years at issue. We find that it may not. The third issue is whether petitioner may deduct $54,558 in miscellaneous legal expenses for 1999. We find that petitioner is not entitled to the deduction. The fourth issue is whether petitioner is entitled to claim cost of goods sold attributable to the write-down of inventory for the years at issue. We find that petitioner is not entitled to such costs. The final issue is whether petitioner is liable for accuracy-related penalties under section 6662(a) for the years at issue. We find that petitioner is liable for the penalties.

---

[1] All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2] The parties resolved issues relating to the deductibility of management fees, imputed interest, employee benefits expenses, transit expenses, and prepaid expenses, resulting in an $87,225 net increase in taxable income for 1999 and a $275,459 increase for 2000. Other issues are computational. In addition, we find no merit to petitioner's racial profiling argument.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioner is a California corporation with its principal place of business in West Covina, California. Zaid Alhassen (Mr. Alhassen) owned 100 percent of the stock in petitioner, which operated a Dodge dealership.

Legal Fees Incurred in the HIP Bankruptcy

Mr. Alhassen and his two brothers owned 100 percent of Hassen Holding Co., the parent and owner of Hassen Imports Inc. Hassen Imports, Inc. was a 1-percent general partner of HIP, petitioner's landlord, which owned and leased to petitioner the site of the Dodge dealership (West Covina property).

HIP filed for chapter 11 bankruptcy in April 1998 to prevent foreclosure of the West Covina property. The mortgagor bank expressed its intent to "toss out" petitioner from the property during the bankruptcy proceeding. The leases between petitioner and HIP provide, however, that a foreclosing mortgagor is deemed to have assumed and agreed to carry out the covenants and obligations of the leases. Mr. Alhassen signed these leases as the representative for both petitioner and HIP. Petitioner participated in HIP's bankruptcy reorganization and was able to expand its business to two additional parcels of land that HIP acquired as a result of the reorganization. Petitioner directly paid $46,897 of bankruptcy-related fees in 1999 and $194,802 in

2000. Petitioner reimbursed HIP for $21,192 of bankruptcy-related fees in 1999 and $52,833 in 2000. Petitioner claimed these fees as deductions on its returns for the respective years.

Legal Fees Incurred in the Clippinger Acquisition

In an unrelated transaction, Mr. Alhassen entered into an agreement to purchase (purchase agreement) the assets of Clippinger, an established new car dealership in Covina, California. Mr. Alhassen assigned the purchase rights to petitioner, who consummated the purchase agreement with Clippinger in November 1999. Petitioner acquired Clippinger's inventory of new and used automobiles, automobile parts and accessories, new automobile deposits, fixed assets including shop equipment and machinery, and intangible assets including goodwill and trademark rights. Escrow documents list the Clippinger purchase price as $6,206,813.81. The purchase agreement assigned specific dollar values to the assets as follows: $250,000 to fixed assets, $1 to miscellaneous assets, and $3,500,000 to goodwill and other intangible assets.

Clippinger also required petitioner to assume Clippinger's legal fees for structuring a seller-financing arrangement when petitioner was unable to proceed with the transaction on a cash basis. Petitioner paid $100,000 in fees to Clippinger's counsel in 1999 for preparing multiple loan documents and lease agreements, and petitioner incurred $19,251 of legal fees in 1999 and $19,214 in 2000 for its own representation in the Clippinger

acquisition. Petitioner claimed all these fees, including those paid to Clippinger's counsel, on its returns for the respective years.

The parties also dispute whether $54,558 of miscellaneous legal expenses may be deducted for 1999.[3]

Inventory Write-Down

Respondent also challenges petitioner's method of writing down inventory.[4] Petitioner assigned a stock number to each new and used automobile in its inventory. Petitioner referenced the stock number in records comparing the cost and the market value of each automobile for purposes of determining the proper write-down, if any. Petitioner did not include, however, complete information concerning the year, make, and model for several automobiles in these records, nor did these records indicate the condition, mileage, or equipment options of any of the automobiles. Petitioner's accountants estimated market value based on the Kelly Blue Book average wholesale prices without reference to the actual condition, mileage, or equipment options of any of the automobiles.

---

[3] Respondent originally disallowed $358,711 in miscellaneous legal fees but conceded that petitioner had substantiated and was entitled to claim $304,153.

[4] The parties stipulated that it is industry custom to use the lower of cost or market method of inventory valuation under which items are valued at the lower of cost or market value. This method usually results in an adjustment to inventory, by means of a write-down of inventory to market value.

Petitioner's write-down calculations show that the inventory write-down should have been $309,172.04 for 1999 and $344,207.67 for 2000. Petitioner recorded the inventory write-down adjustment for the years at issue, however, as a trial balance sheet item titled "UV Res for Writedown." Petitioner offset $340,181.09 against a reserve for each of the years at issue, rather than using the write-down amounts from its records.

Petitioner's ending inventory for 2000 consisted of 96 automobiles, 35 of which had been listed in petitioner's ending inventory for 1999. Petitioner did not adjust the cost of these automobiles at the beginning of 2000 by the write-down taken at the end of 1999, resulting in a $79,824.75 overstatement of inventory write-down in 2000.

Petitioner timely filed its Federal income tax returns for the years at issue. Respondent examined petitioner's returns and issued a deficiency notice disallowing various deductions and cost of goods sold. The amounts still in dispute include legal fees incurred in the HIP bankruptcy, in the Clippinger acquisition, and for other legal expenses, as well as the cost of goods sold attributable to inventory write-down.

OPINION

I. Character of Legal Fees

We are asked to decide whether petitioner is entitled to deduct various legal expenses as ordinary and necessary business

expenses under section 162 or must capitalize them under section 263. It is well established that attorney's fees that are paid as ordinary and necessary expenses may be deductible. See Bagley v. Commissioner, 8 T.C. 130, 134 (1947). No deduction is allowed, however, for attorney's fees that are considered capital expenditures. Sec. 263; Woodward v. Commissioner, 397 U.S. 572, 575 (1970); Flint v. Commissioner, T.C. Memo. 1991-405. The parties agree that the legal expenses at issue here must be analyzed under the "origin of the claim" doctrine. See Mosby v. Commissioner, 86 T.C. 190 (1986).

Courts apply the origin of the claim test to determine whether expenses are deductible under section 162 or subject to capitalization under section 263. Woodward v. Commissioner, supra; United States v. Gilmore, 372 U.S. 39 (1963). The substance of the underlying claim or the nature of the transaction out of which the expenditure in controversy arose governs whether the item is a deductible expense or a capital expenditure, regardless of the payor's motives or the consequences resulting from the failure to defeat the claim. See Woodward v. Commissioner, supra at 578; Newark Morning Ledger Co. v. United States, 539 F.2d 929, 935 (3d Cir. 1976); Clark Oil & Ref. Corp. v. United States, 473 F.2d 1217, 1220 (7th Cir. 1973); Anchor Coupling Co. v. United States, 427 F.2d 429, 433 (7th Cir. 1970). This test requires examination of all the facts and

events underlying the claim, and each case turns on its special facts. Boagni v. Commissioner, 59 T.C. 708, 713 (1973).

II. Legal Fees Incurred in the HIP Bankruptcy

Against this background, we address whether the legal fees petitioner incurred must be capitalized or are currently deductible. First we address the legal fees petitioner paid to defend HIP in the bankruptcy reorganization. Respondent determined that the bankruptcy-related legal fees were ordinary and necessary expenses of petitioner but nevertheless were not deductible because they were rooted in the defense of title. Petitioner argues that these expenses were paid to stave off its extinction and are therefore deductible. We agree with respondent.

Legal expenses incurred to defend claims that would injure or destroy a business are ordinary and necessary expenses. Commissioner v. Heininger, 320 U.S. 467, 471-472 (1943). The expenses incurred in defending legal title, however, are not deductible and must be capitalized. Duntley v. Commissioner, T.C. Memo. 1987-579; sec. 1.263(a)-2(c), Income Tax Regs. We have held that legal expenses incurred in defending or postponing foreclosure actions must be capitalized because they are actions in defense of title. Flint v. Commissioner, supra; Boyajian v. Commissioner, T.C. Memo. 1970-78. We see no difference where a

tenant, as here, takes the highly unusual action of paying expenses to defend its landlord's title.

A taxpayer may not deduct the expenses of another as a general rule. See <u>Deputy v. du Pont</u>, 308 U.S. 488 (1940). We have recognized a narrow exception where the original obligor is unable to make payment and the taxpayer satisfies the obligation to protect its own business interests. See <u>Hood v. Commissioner</u>, 115 T.C. 172, 180-181 (2000) (and cases cited threat); <u>Lohrke v. Commissioner</u>, 48 T.C. 679 (1967). The adverse consequences for the payor taxpayer's business must be direct and proximate, however, as demonstrated by the impact on the payor's business of an obligor's inability to meet its obligations. <u>Hood v. Commissioner</u>, <u>supra</u> at 180-181. Here, there is no suggestion that HIP was unable to pay the bankruptcy-related legal fees. In fact, HIP had paid some of the fees, and petitioner reimbursed HIP. Accordingly, we conclude that petitioner may not deduct these expenses because the benefits to petitioner are not as direct and proximate as required for the narrow exception set out in <u>Lohrke</u>.

## III. <u>Legal Fees Incurred in the Clippinger Acquisition</u>

We now turn to the legal fees petitioner incurred to acquire Clippinger. Respondent argues that the $119,251 of legal expenses in 1999 and the $19,214 of legal expenses in 2000 are capital expenditures because petitioner incurred them while

acquiring a capital asset.  Petitioner counters that these fees are deductible because they relate to inventory, which turns over every 90 to 150 days and does not provide significant benefit beyond a taxable year.  Petitioner further argues that these fees were either directly linked to physical inventory and inventory financing or were related to the Clippinger purchase in which 74 to 90 percent of the purchase price was attributable to inventory.

We agree with respondent that the expenses incurred in the Clippinger acquisition are not deductible because they constitute capital expenditures.  It is well settled that legal expenses incurred in the acquisition or disposition of a capital asset are capital expenditures.  <u>Woodward v. Commissioner</u>, 397 U.S. at 574.

Moreover, we find petitioner's argument that most of the Clippinger purchase price represented automobile inventory conflicts with the evidence in the record.  Escrow documents list the Clippinger purchase price at $6,206,813.81, and removing the amounts allocated in the purchase agreement to non-inventory items[5] leaves less than $2,400,000 (i.e., less than 40 percent) of the purchase price allocated to Clippinger's inventory and other assets.  We find Mr. Alhassen's uncorroborated testimony

_____

[5] The amount representing non-inventory items includes $100,000 for legal fees paid to Clippinger's counsel, $250,000 for fixed assets, $1 for miscellaneous assets, and $3,500,000 for goodwill and intangible assets.

concerning the portion of the purchase price allocated to inventory insufficient to overcome the information found in the escrow documents and purchase agreement.[6] We are not required to, nor do we in this instance, accept the self-serving testimony of interested parties without probative corroboration. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Yang v. Commissioner, T.C. Memo. 2000-263.

In addition, petitioner's records contradict its position that inventory turned over every 90 to 150 days as 35 of the 96 automobiles included in the 2000 year-end inventory were also listed in the 1999 year-end inventory. We conclude that the acquisition-related legal fees are not deductible as ordinary and necessary business expenses.

IV. Miscellaneous Legal Fees

Respondent also disallowed $54,448 of miscellaneous legal fees for 1999. Petitioner has not provided the Court with any information regarding these miscellaneous legal fees. Accordingly, we find that petitioner is not entitled to deduct these fees.

---

[6] Petitioner also failed to provide invoices or records for the acquisition-related legal services, indicating that these services related specifically to physical inventory or inventory financing, nor did we find the accountant's testimony credible as to this issue.

V.    Cost of Goods Sold Related to the Write-Down of Inventory

We now turn to petitioner's method of accounting for inventory write-down.  Respondent disallowed $306,163 of cost of sales expenses related to inventory write-down for the years at issue.  Respondent argues that petitioner both failed to substantiate the write-downs and violated the regulations under section 471 by using a reserve amount.  Petitioner argues that its accounting complied with industry standards and the write-downs should be allowed.[7]  We disagree with petitioner.

A taxpayer is required to use a method of accounting for inventory that clearly reflects the taxpayer's income.  Sec. 471; Best Auto Sales, Inc. v. Commissioner, T.C. Memo. 2002-297, affd. 90 Fed. Appx. 388 (11th Cir. 2004).  The taxpayer has a heavy burden of proving that the Commissioner's determination is plainly arbitrary and constitutes an abuse of discretion if the Commissioner determines that the taxpayer's method of accounting for inventory under section 471 is improper.  Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979).

A taxpayer using the lower of cost or market method of valuing inventory may write-down a decline in the value of merchandise from its cost to a lower market value in the year in which the decline occurs, even though the goods have not been

---

[7]Petitioner also argued that the inventory write-down had no taxable effect.  We find this argument to be without merit.

sold.  Sec. 471; sec. 1.471-2(c), Income Tax Regs.  This is referred to as an inventory write-down.  If the market value of the inventory at the end of the year is lower than its cost, the taxpayer writes down the basis of the inventory to the lower market value, thereby reducing gross income.  Thor Power Tool Co. v. Commissioner, supra at 534-535; sec. 1.471-4(c), Income Tax Regs.  Deducting a reserve for price changes from the inventory or writing down inventory based on mere estimates, however, is not allowable.  Sec. 1.471-2(f)(1), Income Tax Regs.  Further, we will not disturb the Commissioner's determination disallowing a taxpayers's write-downs without objective evidence substantiating an item-by-item comparison of cost-to-market value.  See Thor Power Tool Co. v. Commissioner, supra at 536; Import Specialties, Inc. v. Commissioner, T.C. Memo. 1982-41.

Petitioner's accountant determined market value for write-down purposes as the wholesale Kelly Blue Book value with the assumption that the automobiles were in average condition.[8] Petitioner's accountant testified that it is necessary to know the make, model, and year of the automobile, as well as the automobile's condition, mileage, and equipment options to determine the Kelly Blue Book value.  Yet petitioner's write-down

---

[8] We acknowledge than an official guide for used automobiles may be used to determine the market value for write-down purposes.  Brooks-Massey Dodge, Inc. v. Commissioner, 60 T.C. 884, 895 (1973).

records do not include complete information.  Petitioner's
records lack the make, model, and year of several automobiles and
do not include the mileage, condition, or options of any
automobiles.  Petitioner argues that this method is the industry
standard and any differences between the method used and a more
detailed analysis would have been immaterial.  We are not
persuaded given the incomplete write-down records and absence of
any corroborating evidence to support the estimated Kelly Blue
Book values.

In addition, petitioner did not then use its write-down
calculations of $309,172.04 in 1999 and $344,207.67 in 2000 to
determine its cost of goods sold.  Rather, petitioner violated
the regulations when it substituted a reserve amount of
$340,181.09 as the write-down for both years.  See sec. 1.471-
2(f)(1), Income Tax Regs.

We find that petitioner did not adequately substantiate the
inventory write-downs and relied on a reserve in violation of the
section 471 regulations.  We also find that petitioner failed to
prove that the Commissioner's determination was arbitrary and an
abuse of discretion.  Accordingly, we sustain respondent's
determination as to this issue.

VI.  Section 6662(a) Penalties

We next address whether petitioner is liable for the
accuracy-related penalties under section 6662(a).  Respondent has

the burden of production under section 7491(c) and must come forward with sufficient evidence that it is appropriate to impose a penalty. See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001). Respondent determined that petitioner was liable for substantial understatements of income tax under section 6662(b)(2) for the years at issue.[9] A taxpayer is liable for an accuracy-related penalty of 20 percent of any part of an underpayment attributable to, among other things, a substantial understatement of income tax. See sec. 6662(a) and (b)(2); sec. 1.6662-2(a)(2), Income Tax Regs. There is a substantial understatement of income tax if the understatement amount exceeds the greater of 10 percent of the tax required to be shown on the return, or $10,000. Sec. 6662(d)(1)(B); sec. 1.6662-4(b)(1), Income Tax Regs.

Petitioner reported income tax of zero for the years at issue and reported negative taxable income of $258,427 for taxable year 1999 and zero taxable income for 2000. Respondent has met his burden of production because the adjustments related

---

[9] Respondent determined in the alternative that petitioner was liable for accuracy-related penalties for negligence or disregard of rules or regulations under sec. 6662(b)(1) for the years at issue. Because respondent has proven that petitioner substantially understated its income tax for the years at issue, we need not consider whether petitioner was negligent or disregarded rules or regulations.

to the conceded issues alone are sufficient to meet the threshold amounts under section 6662(d)(1).[10]

Petitioner urges us to waive the section 6662(a) penalties for three reasons. First, petitioner claims there was substantial authority for the positions taken on its tax returns. Next, petitioner argues it provided adequate disclosure of the relevant facts affecting its tax treatment of the items on the returns. Finally, petitioner claims to have reasonable cause for its positions on the returns.

While the Commissioner bears the burden of production under section 7491(c), the taxpayer bears the burden of proof with regard to issues of reasonable cause, substantial authority, or similar provisions.[11] Higbee v. Commissioner, supra at 446. We address these arguments in turn.

A.    Substantial Authority for Positions Taken

Substantial authority for the tax treatment of an item exists only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary positions. See Norgaard v. Commissioner, 939 F.2d 874, 880 (9th Cir. 1991), affg. in part and revg. in part

[10] See supra note 2.

[11] Petitioner presented no evidence concerning the issues of reasonable cause, substantial authority, or disclosure and reasonable basis in relation to its positions for the conceded issues and did not carry its burden as to these issues. See supra note 2.

T.C. Memo. 1989-390; sec. 1.6662-4(d)(3)(I), Income Tax Regs. The weight of an authority depends on its source, persuasiveness, and relevance. Sec. 1.6662-4(d)(3)(ii), Income Tax Regs.

The weight of authority consistently favored respondent. We found no merit to petitioner's arguments concerning the deductibility of the attorney's fees. In addition, petitioner's position regarding the inventory write-down explicitly contradicts the relevant income tax regulations. Sec. 1.471-2(f)(1), Income Tax Regs. Accordingly, we find that the substantial authority exception does not apply.

B. <u>Disclosure of a Position and Reasonable Basis for Treatment</u>

We now address whether petitioner adequately disclosed its position. No accuracy-related penalty may be imposed for a substantial understatement of income tax when the taxpayer adequately discloses the relevant facts affecting the tax treatment of an item and there existed a reasonable basis[12] for the treatment of that item. Sec. 6662(d)(2)(B); sec. 1.6662-4(e), Income Tax Regs. A taxpayer may make adequate disclosure

---

[12] A return position generally has a reasonable basis if it is reasonably based on one or more of the following authorities, among others: The Internal Revenue Code and other statutory provisions; proposed, temporary, and final regulations construing the statutes; court cases; and congressional intent as reflected in committee reports. Sec. 1.6662-4(d)(3)(iii), Income Tax Regs. The reasonable basis standard is not satisfied by a return position that is merely arguable or is merely a colorable claim. Sec. 1.6662-3(b)(3), Income Tax Regs.

if the taxpayer provides sufficient information on the return to enable the Commissioner to identify the potential controversy. Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). Merely claiming the loss without further explanation, however, is insufficient to alert the Commissioner to the controversial nature of a loss claimed on the tax return. McConnell v. Commissioner, T.C. Memo. 2008-167 (citing Robnett v. Commissioner, T.C. Memo. 2001-17).

Petitioner did not provide sufficient facts to supply respondent with actual or constructive knowledge of the tax treatment of the disputed items. See Robnett v. Commissioner, supra. The returns do not mention petitioner's inventory write-down method, or that petitioner deducted legal fees related to HIP's bankruptcy and the Clippinger purchase. We find that petitioner did not adequately disclose its position, and the adequate disclosure exception does not apply.

C.  Reasonable Cause

We now address whether petitioner had reasonable cause. The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, that portion. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the

pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and the taxpayer's reliance on the advice of a professional.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner argues that it is not liable for the accuracy-related penalties because it relied upon the advice of its accountant concerning the tax treatment of the disputed items. Reliance on the advice of a competent adviser can be a defense to the accuracy-related penalty.  United States v. Boyle, 469 U.S. 241, 250 (1985); Zfass v. Commissioner, 118 F.3d 184 (4th Cir. 1997), affg. T.C. Memo. 1996-167; sec. 1.6664-4(b)(1), Income Tax Regs.  Reliance must be reasonable, in good faith, and based upon full disclosure, however.  Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987).

Petitioner has not shown that it supplied its accountant with all the correct and necessary information needed to establish its position, that its error in underreporting was the result of the preparer's mistake, or that it discussed the tax treatment of the legal fee deductions with its accountant before filing the returns.

After considering all of the facts and circumstances, we find that petitioner has not established that it had reasonable cause and acted in good faith with respect to the substantial understatements of income tax. Accordingly, we sustain respondent's determination regarding the accuracy-related penalties for the years at issue.

VII. Conclusion

In reaching our holdings, we have considered all arguments made, and to the extent not mentioned, we consider them irrelevant, moot, or without merit.

To reflect the foregoing and the concessions of the parties,

Decision will be entered under Rule 155.