T.C. Memo. 2009-291

UNITED STATES TAX COURT

WEST COVINA MOTORS, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent*

Docket No. 4802-04.                    Filed December 16, 2009.

Steven Ray Mather and Elliott Hugh Kajan, for petitioner.

Alan H. Cooper, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

KROUPA, Judge:  We previously issued an opinion determining, among other things, that petitioner was not entitled to deduct legal fees related to the acquisition of an automobile dealership.  See West Covina Motors, Inc. v. Commissioner, T.C.

---

*This opinion supplements our prior Memorandum Opinion, West Covina Motors, Inc. v. Commissioner, T.C. Memo. 2008-237.

Memo. 2008-237 (West Covina I).  Petitioner timely filed a motion

for reconsideration pursuant to Rule 161.[1]  We denied

petitioner's motion except that we reopened the record for the

limited purpose of accepting evidence regarding the allocation of

the legal fees and their proper period of amortization or

deduction.

The parties have stipulated all additional facts necessary

to address two issues regarding the legal fees.  The first issue

is whether any portion of the legal fees is related solely to

inventory and, if so, when those fees would be allowable as costs

of goods sold.  The second issue is whether any of the remaining

legal fees are allocable to the acquired assets and what the

period of amortization of such fees would be.  All other issues

have been resolved by the parties, are computational, or were

resolved by the Court in West Covina I.

<u>Background</u>

We incorporate our findings in West Covina I for purposes of

this supplemental opinion.  We repeat here the facts necessary to

understand the discussion that follows, and we supplement those

facts with the additional stipulated facts of the parties.  The

supplemental facts have been stipulated under Rule 122, and the

---

[1]All section references are to the Internal Revenue Code in
effect for 1999, and all Rule references are to the
Tax Court Rules of Practice and Procedure, unless otherwise
indicated.

supplemental stipulation of facts and the accompanying exhibits are incorporated by this reference.

Petitioner is a corporation with its principal place of business in California. It is an accrual method taxpayer. Zaid Alhassen (Mr. Alhassen) is the sole shareholder of petitioner, which operated a Dodge dealership during the years at issue.

Mr. Alhassen entered into an agreement to purchase (purchase agreement) the assets of Clippinger Chevrolet (Clippinger), an established new car dealership in Covina, California. Mr. Alhassen assigned the purchase rights to petitioner, who consummated the purchase agreement with Clippinger in November 1999. The parties stipulated that petitioner paid $6,050,601[2] for certain assets of Clippinger, including $250,001 for fixed assets, $3.5 million for goodwill, and $2,300,600 for inventory of used vehicles, parts, and miscellaneous items. They further stipulated that petitioner acquired Clippinger's $6,258,074 new and demonstrator vehicle inventory, which was subject to a $6,421,047 floor plan line of credit. Accordingly, the total purchase price of the Clippinger assets was $12,308,675 ($6,050,601 for assets under the purchase agreement + $6,258,074 for new and demonstrator vehicle inventory).

Petitioner paid acquisition-related legal fees of $116,293 in 1999 to Clippinger's counsel, Norman Hoffman. Most, if not all, of the fees paid to Mr. Hoffman were for drafting multiple

---

[2]All dollar amounts are rounded to the nearest dollar.

loan documents and leases related to a seller-financing arrangement for the assets purchased under the purchase agreement. Petitioner also paid $2,958 to Chrysler Financial in 1999 and $9,564 to Cooksey, Howard, Martin, & Toolen (Cooksey) in 2000. These fees were paid primarily for document review and other services related to inventory financing. In addition, petitioner paid $9,550 to Rogers, Clem, & Company (Rogers Clem) in 2000 in connection with the Clippinger acquisition. These fees were related to the overall Clippinger acquisition as well as physical inventory of the vehicles. Approximately $6,675 of the $9,550 paid to Rogers Clem was paid for physical inventory.

## Discussion

Petitioner argued in West Covina I that all of the legal fees at issue were currently deductible because they either related entirely to inventory financing or physical inventory or because 80 to 90 percent of the Clippinger purchase price was incurred for the purchase of inventory. We found in West Covina I that these fees were nondeductible capital expenditures because they were incurred in connection with the purchase of a capital asset and that petitioner did not provide proper substantiation that any fees were allocable entirely to inventory. West Covina Motors, Inc. v. Commissioner, supra. In addition, petitioner did not provide necessary evidence concerning the total purchase price or the amounts paid for inventory. We must revisit the treatment of legal fees attributable entirely to inventory given

the new stipulated facts and accompanying exhibits.  We then turn to the proper allocation of any remaining acquisition-related legal fees and their period of amortization.

I.  Legal Fees Attributable to Inventory

We first address whether any of the $138,365 in legal fees is attributable to inventory and therefore allowable as cost of goods sold.  Petitioner did not properly substantiate at trial the legal fees it claimed were associated entirely with inventory.  The parties have stipulated, however, further evidence regarding these fees, including itemized billing statements from the respective attorneys.  We must determine whether this evidence is sufficient to entitle petitioner to treat any of the legal fees as cost of goods sold.

We begin by noting the fundamental principle that the Commissioner's determinations are generally presumed correct, and the taxpayer bears the burden of proving that these determinations are erroneous. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111 (1933).  This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).  Taxpayers must substantiate the amount they report as cost of goods sold, and they must maintain sufficient records for this purpose.  Sec. 6001; Nunn v. Commissioner, T.C. Memo. 2002-250; Wright v. Commissioner, T.C. Memo. 1993-27; sec. 1.6001-1(a), Income Tax Regs.

We find that the legal fees paid to Chrysler Financial and Cooksey were attributable to inventory financing. We further find that petitioner paid $6,675 to Rogers Clem for services related to physical inventory of vehicle inventory. Accordingly, we hold that these fees are allowable as cost of goods sold. See, e.g., Dowd v. Commissioner, 68 T.C. 294, 303-304 (1977) (attorney's fees held deductible to the extent that they related to cost of goods sold). The parties stipulated that any legal fees attributable to cost of goods sold are deductible 40 percent in 1999 and 60 percent in 2000, and we so hold.

II.  Allocation of Remaining Legal Fees

We turn now to the allocation and amortization of the $116,293 legal fees paid to Mr. Hoffman and the $2,875 balance paid to Rogers Clem (remaining legal fees). The remaining legal fees are not specifically related to inventory but instead are capital expenditures related to the Clippinger acquisition. West Covina Motors, Inc. v. Commissioner, T.C. Memo. 2008-237. The parties agree that these capital expenditures must be amortized over the useful life of the assets to which they relate. See Commissioner v. Tellier, 383 U.S. 687, 689-690 (1966). The remaining fees paid to Rogers Clem are related to the overall Clippinger purchase. We find that the legal fees paid to Mr. Hoffman, however, were incurred in furtherance of the seller-financing arrangement and are related only to the assets

purchased under the purchase agreement. We must first determine how the legal fees are allocated to the purchased assets to then determine the period over which those legal fees should be recovered.

The parties agree that the record in West Covina I lacked sufficient evidence concerning the total cost of the Clippinger acquisition and the breakdown of the amounts paid for the various categories of assets. The parties have now stipulated the amounts paid for each category of assets. The parties still do not agree, however, as to how the legal fees should be allocated among these assets.

Respondent argues that the legal fees must be allocated in accordance with the fair-market-value limitations of section 1060, which applies to applicable asset acquisitions. He further argues that all of the legal fees must be allocated under section 1060 to class V intangible assets, which include goodwill and going concern value. He therefore argues that the legal fees must be amortized ratably over 15 years beginning with the month of purchase under section 197. Petitioner counters that section 1060 does not apply to the allocation of the legal fees. We agree with petitioner.

A. Operation of Section 1060

Petitioner does not dispute that the Clippinger purchase constitutes an "applicable asset acquisition" under section 1060.

An applicable asset acquisition is any transfer (whether direct or indirect) of assets constituting a trade or business and in which the transferee's basis is determined wholly by reference to the consideration paid for such assets. Sec. 1060(c). Generally, a written agreement is binding in such an acquisition as to the allocation of the consideration or as to the fair market value of any of the assets. Sec. 1060(a). Where the parties do not allocate the consideration entirely, however, the residual method of purchase price allocation may apply to determine both the purchaser's basis in, and the seller's gain or loss from, each of the transferred assets. East Ford, Inc. v. Commissioner, T.C. Memo. 1994-261; see also sec. 1060(a).

A taxpayer generally allocates the consideration received to the acquired assets, to the extent of their fair market values, in descending order of priority by class under the residual allocation method. Sec. 1060(a); sec. 1.1060-1T(a), (d), Temporary Income Tax Regs., 53 Fed. Reg. 27039, 27040 (July 18, 1988), amended by 62 Fed. Reg. 2272, 2273 (Jan. 16, 1997). Consideration is first reduced by the amount of class I assets, which include cash, bank accounts, and other similar items. Sec. 1.1060-1T(d)(1), Temporary Income Tax Regs., supra. Any remaining consideration is allocated to the remaining classes of assets in proportion to the assets' fair market value. Sec. 1.1060-1T(d)(2), Temporary Income Tax Regs., supra. The

remaining consideration is first allocated among class II assets, then among class III assets, then among class IV assets, and finally to class V assets.  Id.  Class II assets include certificates of deposits, U.S. Government securities, readily marketable stock or securities, foreign currency, and other similar items.  Sec. 1.1060-1T(d)(2)(ii), Temporary Income Tax Regs., supra.  Class III assets are all assets other than class I, II, IV, and V assets, generally, tangible property.  See sec. 1.1060-1T(d)(2)(iii), Temporary Income Tax Regs., supra.  Class IV assets are all section 197 intangibles except those in the nature of goodwill and going concern value.  Sec. 1.1060-1T(d)(2)(iv), Temporary Income Tax Regs., supra.  Finally, class V assets are section 197 intangibles in the nature of goodwill and going concern value.  Sec. 1.1060-1T(d)(2)(v), Temporary Income Tax Regs., supra.

Allocation of consideration is subject to fair-market-value limitations under the residual method.  Accordingly, the amount of consideration allocated to an asset (other than Class V assets) must not exceed the fair market value of that asset on the purchase date.  Sec. 1.1060-1T(e)(1), Temporary Income Tax Regs., 62 Fed. Reg. 2273 (Jan. 16, 1997).  Thus, any residual consideration that is not allocated to other assets must be allocated to the class V assets.  See East Ford, Inc. v.

Commissioner, supra;[3] sec. 1.1060-1T(d), Temporary Income Tax

Regs., 62 Fed. Reg. 2267 (Jan. 16, 1997) (adding class V assets).

We find that there were no class I, class II, or class IV

assets transferred in the Clippinger acquisition. Therefore the

entire purchase price must be allocated between class III and

class V assets. See East Ford, Inc. v. Commissioner, supra. The

parties have stipulated that $8,808,675[4] of the Clippinger

purchase price is properly allocated to class III assets,

including new, used, and demonstrator vehicle inventory, parts

inventory, and other fixed assets. The parties have further

stipulated that $3.5 million is properly allocated to goodwill.

Thus, there is no controversy concerning the allocation of the

purchase price to these assets.

B.    The Legal Fees Are Not Subject to Section 1060

We must now decide whether the legal fees must be allocated

under section 1060. Respondent cites no authority requiring

legal fees to be allocated under the fair-market-value

limitations of section 1060 where the parties have stipulated the

cost of each asset, and we find none. Section 1060 is meant to

prevent abuse where there is no agreement between the parties

---

[3]The residual class was Class IV assets for the years at issue in East Ford, Inc. v. Commissioner, T.C. Memo. 1994-261.

[4]($250,000 for fixed assets + $2,300,600 for used vehicle and parts inventory + $6,258,074 for new vehicle inventory + $1 for miscellaneous assets).

concerning how much of the purchase price is allocable to which category of assets.  See S. Rept. 99-313, at 254 (1986), 1986-3 C.B. (Vol. 3) 1, 254.  The residual allocation method prevents the parties from taking inconsistent positions for individual tax advantages.  See id.

Respondent equates the term "consideration" in section 1060 to the purchaser's cost basis in the assets acquired.  We presume respondent does so because section 1060 describes an applicable asset acquisition as an acquisition in which the purchaser's basis in the transferred assets is determined wholly by reference to the purchaser's consideration.  Sec. 1060(c).  A taxpayer generally has a basis in property equal to its cost, which is defined as "the amount paid for such property in cash or other property."  Sec. 1012; sec. 1012-1(a), Income Tax Regs.  Legal fees incurred in the acquisition or disposition of a capital asset are to be treated as capital expenditures and are to be "added to the basis of the capital asset with respect to which they are incurred."  Woodward v. Commissioner, 397 U.S. 572, 574-575 (1970); Berry Petroleum Co. & Subs. v. Commissioner, 104 T.C. 584, 618 (1995), affd. without published opinion 142 F.3d 442 (9th Cir. 1998).  Respondent therefore argues that petitioner's cost basis, including fees paid to third parties, must be allocated under the fair-market-value limitations of

section 1060. We disagree. The parties have stipulated the cost of each asset. Accordingly, section 1060 does not apply.

Respondent makes no alternative argument as to how the acquisition-related legal fees should be allocated. We therefore agree with petitioner that the legal fees should be allocated proportionately to the assets with which they are associated. The parties have stipulated that petitioner paid Mr. Hoffman to draft documents related to the seller-financing arrangement. We therefore conclude that the legal fees paid to Mr. Hoffman should be allocated pro rata among the assets acquired under the purchase agreement. These assets include all assets except the new and demonstrator car inventory. Accordingly, the legal fees paid to Mr. Hoffman will be allocated to fixed assets (4.1 percent), goodwill (57.9 percent), and used vehicles and parts (38 percent).

The balance of the legal fees paid to Rogers Clem, excluding the amount paid for physical inventory, shall be allocated proportionally among all assets purchased. The parties have stipulated the allocation of the Clippinger purchase price. Accordingly, these fees will be allocated to fixed assets (2.03 percent), goodwill (28.44 percent), used vehicles and parts (18.69 percent), and new and demonstrator vehicles (50.84 percent).

The parties have also stipulated the period of amortization or deduction for fees allocated to each category of assets.  We therefore conclude that the legal fees allocated to fixed assets are amortizable over seven years under section 168 and those attributable to goodwill are amortizable over 15 years under section 197.  We further hold that the legal fees allocated to inventory (both new and used, including parts) are allowable as cost of goods sold, 40 percent in 1999 and 60 percent in 2000.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.