T.C. Memo. 2019-140

UNITED STATES TAX COURT

PLANO HOLDING LLC, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9169-17.                    Filed October 16, 2019.

<u>Donald A. Barnes</u>, for petitioner.

<u>Thomas F. Harriman</u>, <u>Naseem Jehan Khan</u>, and <u>Michelle E. Marcove</u>, for

respondent.

MEMORANDUM OPINION

URDA, <u>Judge</u>:  The Ontario Teachers' Pension Plan Board (OTPP) is one of

Canada's largest institutional investors.  In 2012 it caught whiff of a chance to

acquire Plano Molding Co. (Plano), an Illinois plastics manufacturer.  OTPP did

so later that year for approximately $240 million, which resulted in Plano's

**[\*2]** becoming a wholly owned subsidiary of petitioner Plano Holding LLC (Holding), which was in turn controlled by OTPP. Before closing (and contingent on the closing's success) OTPP agreed to pay $1.5 million to Robert W. Baird & Co., Inc. (Baird), the company that put OTPP onto Plano's scent. It was Plano, however, that ended up footing the bill.

Holding and Plano filed a consolidated Federal income tax return for 2012, in which a business expense deduction under section 162[1] was claimed for Plano's payment to Baird. The Internal Revenue Service (IRS) issued a notice of deficiency disallowing the deduction on the ground that Baird had not provided any services to Holding or Plano. The IRS determined a deficiency of $90,385 and an accuracy-related penalty of $18,077. We will sustain both.

## Background

The parties have submitted this case for decision without trial under Rule 122. All relevant facts have been stipulated or are otherwise included in the record. See Rule 122(a). Holding, a Delaware limited liability company that

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 (Code), as amended, in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3] elected to be taxed as a corporation for Federal tax purposes, had its principal place of business in Illinois when it timely filed the petition.

A.    Plano Draws OTPP's Interest

Plano specializes in the manufacture of plastic storage equipment for outdoor sports. Founded in Illinois in 1932, it introduced the first plastic tackle box to the fishing world 20 years later and since then has expanded its product lines to include archery and gun cases, ammunition boxes, shelving, tool boxes, and cosmetics cases.

In February 2007 Tinicum Capital Partners (Tinicum), an investment firm, became Plano's majority shareholder. Three years later (in 2010) Plano retained Baird as its financial advisor with an eye to a potential sale of the company. No sale took place at that time, however.

In 2012 Baird suggested Plano as a potential acquisition candidate to OTPP--a Canadian corporation without share capital (a not-for-profit corporation) and a major institutional investor. After gauging Tinicum's interest in selling Plano, Baird's managing director sent an email on July 2, 2012, to set up an introductory lunch. Although lunch proved unworkable, representatives of OTPP and Tinicum later discussed the matter by phone. Baird did not participate on the call and had no further input into the acquisition that followed.

**[*4]** On July 26, 2012, Plano retained Harris Williams LLC (Harris Williams) as investment banker and financial advisor for "the possible sale through merger, exchange, or sale of all or substantially all of the assets, business, or stock of * * * [Plano]". Plano expressly agreed that "it has engaged exclusively * * * [Harris Williams]" to act in that capacity. During September and October Harris Williams and OTPP exchanged correspondence and information, and OTPP performed its due diligence. By the end of October OTPP was "ready to proceed on this matter without delay", suggesting that the sale could be closed by early December.

B.    OTPP Acquires Plano

November 2012 saw OTPP and Plano set the table for the acquisition. Acting through a wholly owned subsidiary, OTPP organized Holding and Plano Acquisition, LLC, as Delaware limited liability companies. On November 20, 2012, these two entities entered into a merger agreement with Plano and New Plano Molding, LLC--a vehicle for converting Plano to a Delaware limited liability company--to bring Plano into the OTPP fold as a wholly owned subsidiary of Holding. The deal, as outlined in the merger agreement, closed on December 21, 2012.

The agreement set the purchase price at $240 million, subject to certain adjustments. As relevant here, the parties agreed to an adjustment for "Estimated

[*5] Transaction Expenses," defined as all unpaid fees or expenses incurred by Plano or its subsidiaries (or for which they were liable) in connection with the planned merger. The definition of transaction expenses included fees and expenses payable to financial advisors.

When the deal closed on December 21, 2012, Plano made two different payments to purported financial advisors. Plano first paid Harris Williams a fee of roughly $2.89 million for its services in connection with the merger. Plano also paid $1.5 million to Baird, pursuant to a November 28, 2012, agreement between Baird and OTPP. While the fee paid to Harris Williams was treated as a transaction expense that reduced the purchase price of Plano, the Baird fee was not.

The November agreement stemmed from OTPP's determination that "Baird should be compensated for suggesting * * * [Plano] as a potential acquisition candidate and attempting to arrange an introductory meeting between representatives of OTPP Board and * * * [Plano]." OTPP agreed to pay Baird $1.5 million (upon the successful acquisition of Plano) for Baird's services as its "exclusive financial advisor * * * in connection with the Acquisition." The agreement provided that Baird's services were rendered "solely for the benefit and use of OTPP's management and directors in considering the transaction(s) to

[*6] which they relate." The agreement further stated that "OTPP and Baird agree and acknowledge that * * * this letter is solely for the benefit of the parties to this letter." It likewise specified that the parties' obligations under the agreement could not be assigned by OTPP without Baird's prior written consent.

To sum up, Baird's sole activities regarding the acquisition consisted of (1) suggesting Plano as an acquisition target to OTPP, (2) gauging Tinicum's interest, and (3) attempting to set up lunch between OTPP and Tinicum representatives. At no time did Baird provide any financial advisory services (or other services) to OTPP with respect to the acquisition.

C.     2012 Return and Notice of Deficiency

Holding, Plano, and certain other affiliated corporations filed a consolidated Federal income tax return for the 2012 taxable year in which 70% of the Baird fee ($1.05 million) paid by Plano was deducted (with the balance capitalized) pursuant to an election under Rev. Proc. 2011-29, 2011-18 I.R.B. 746. The IRS thereafter issued Holding a notice of deficiency for 2012 in which it disallowed the claimed deduction of the Baird fee. The IRS asserted that Plano did not establish "that you incurred, or if incurred, paid this amount during the taxable year for ordinary and necessary business purposes and/or that any amount qualifies as a business expense under the provisions of the Internal Revenue Code." The

**[\*7]** IRS determined a deficiency of $90,385 and an accuracy-related penalty under section 6662(a) of $18,077.

Holding subsequently sought redetermination in this Court.

Discussion

The IRS' determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations wrong. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The taxpayer also has the burden of proving its entitlement to deductions allowed by the Code. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). The parties' decision to submit this case fully stipulated does not change these burdens. Rule 122(b); Okerson v. Commissioner, 123 T.C. 258, 263 (2004); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), aff'd, 943 F.2d 22 (8th Cir. 1991).

I.    Treatment of the Baird Fee

A.    Governing Framework

Holding argues that the IRS erred in disallowing the deduction claimed for Plano's payment of $1.5 million to Baird. Whether an expenditure constitutes an "ordinary and necessary" business expense within the meaning of section 162 generally presents a question of fact. See Commissioner v. Heininger, 320 U.S.

**[*8]** 467, 475 (1943); Pac. Mgmt. Grp. v. Commissioner, T.C. Memo. 2018-131, at *33.

Section 162(a) provides a deduction for ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business. An expense is "ordinary" if it is customary or usual within a particular trade, business, or industry or relates to a common or frequent occurrence in the type of business involved. See Deputy v. du Pont, 308 U.S. 488, 495 (1940); Cooper v. Commissioner, 143 T.C. 194, 213 (2014), aff'd, 877 F.3d 1086 (9th Cir. 2017). An expense is "necessary" if it is appropriate and helpful to the development of the taxpayer's business. See Commissioner v. Tellier, 383 U.S. 687, 689 (1966); Commissioner v. Heininger, 320 U.S. at 471. To be deductible, ordinary and necessary expenses must be "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs.; see also Cooper v. Commissioner, 143 T.C. at 213.

A taxpayer generally may not deduct the payment of another person's expenses. See Deputy v. du Pont, 308 U.S. at 494-495; Welch v. Helvering, 290 U.S. at 114; Dietrick v. Commissioner, 881 F.2d 336, 338 (6th Cir. 1989), aff'g T.C. Memo. 1988-180, 55 T.C.M. (CCH) 706 (1988); Lohrke v. Commissioner, 48 T.C. 679, 684 (1967). We have recognized a narrow exception to this rule where

**[\*9]** (1) the taxpayer's primary motive for paying the other's obligation is to protect or promote the taxpayer's own business and (2) the expenditure is an ordinary and necessary expense of the taxpayer's business. Lohrke v. Commissioner, 48 T.C. at 688; see also Cooper v. Commissioner, 143 T.C. at 214; Scheurer v. Commissioner, T.C. Memo. 2017-36, at \*16.

B.    Analysis

The parties have stipulated that OTPP entered into an agreement to pay Baird $1.5 million, which means that a deduction is sought for a payment Plano made on behalf of another.[2]  We thus look to Lohrke.

Neither party, however, refers to Lohrke or makes any effort to frame the instant case in light of that well-established analysis.  Although the parties do not invoke the Lohrke test as such, their arguments nonetheless implicate both of its prongs, as they dispute (1) whether Plano benefited from the payment of the Baird fee and (2) whether the payment of the fee was an ordinary and necessary expense of Plano's business.  As we will discuss, Plano fails on both counts.

---

[2]Holding makes a half-hearted argument that OTPP "assigned" its obligations under the Baird agreement to Plano.  The record belies this contention. The Baird fee agreement provides that it could not be assigned by OTPP without Baird's prior written consent.  Holding fails to introduce any such written consent or other support for its assignment theory.

**[\*10]**      1.      <u>Plano Did Not Pay Baird Primarily To Benefit Its Business</u>.

Generally, the first <u>Lohrke</u> prong requires that a taxpayer pay "the other person's expense primarily to benefit its business, with the receipt by the other person of any benefit from the payment being merely incidental." <u>HIE Holdings, Inc. v. Commissioner</u>, T.C. Memo. 2009-130, 97 T.C.M. (CCH) 1672, 1740 (2009), <u>aff'd</u>, 521 F. App'x 602 (9th Cir. 2013). To establish that it acted primarily to benefit its own business, the taxpayer must "demonstrate a direct nexus between the purpose of the payment and the taxpayer's business or income-producing activities." <u>Bone v. Commissioner</u>, T.C. Memo. 2001-43, 81 T.C.M. (CCH) 1199, 1202 (2001), <u>aff'd</u>, 324 F.3d 1289 (11th Cir. 2003). One common way for a taxpayer to satisfy this requirement is to show that its business would have faced "direct and proximate" adverse consequences had it not made the payment on behalf of the other person.[3] <u>Hood v. Commissioner</u>, 115 T.C. 172,

---

[3]Previous cases in this area have considered whether the taxpayer faced a "clear proximate danger" and made a payment "to protect an existing business from harm". <u>Bone v. Commissioner</u>, T.C. Memo. 2001-43, 81 T.C.M. (CCH) 1199, 1202 (2001) (quoting <u>Young & Rubicam, Inc. v. United States</u>, 410 F.2d 1233, 1243 (Ct. Cl. 1969)), <u>aff'd</u>, 324 F.3d 1289 (11th Cir. 2003); <u>JRJ Express Inc. v. Commissioner</u>, T.C. Memo. 1998-200, 75 T.C.M. (CCH) 2397, 2399 (1998). Holding does not argue that Plano's business faced such a danger were it not to cover OTPP's debt to Baird. <u>Cf.</u> <u>Gould v. Commissioner</u>, 64 T.C. 132, 135 (1975); <u>JRJ Express Inc. v. Commissioner</u>, 75 T.C.M. (CCH) at 2399-2400.

**[*11]** 181 (2000); see also Square D Co. v. Commissioner, 121 T.C. 168, 200 (2003); HIE Holdings, Inc. v. Commissioner, 97 T.C.M. (CCH) at 1740; W. Covina Motors, Inc. v. Commissioner, T.C. Memo. 2008-237, 96 T.C.M. (CCH) 263, 266 (2008), supplemented by T.C. Memo. 2009-291. "Where, as here, the payor and the beneficiary of the payment are a corporation and a controlling shareholder, the corporation's payment of the shareholder's expense is closely scrutinized, and the showing of the primary benefit to the corporation must be strong." HIE Holdings, Inc. v. Commissioner, 97 T.C.M. (CCH) at 1740; see also Hood v. Commissioner, 115 T.C. at 181.

On brief Holding points to Baird's matchmaking role and suggests that Plano made the Baird payment to facilitate its acquisition by OTPP, as would--and did--allow Plano to expand. Holding, however, fails to establish a direct link between the ostensible business purpose (Plano's acquisition by a deep-pocketed investor) and the Baird payment. Holding does not contend that the merger was in any way contingent on Plano's picking up OTPP's tab to Baird. To the contrary the record establishes that Plano and OTPP (acting through its subsidiaries) had already agreed to the merger more than a week before OTPP contracted to pay Baird. Nor does Holding demonstrate any direct and proximate adverse consequences to Plano's business of manufacturing plastic goods had it not

[*12] covered OTPP. While Holding notes that Plano's market footprint expanded after the acquisition, it does not establish that OTPP would have scaled back its plans or financial backing had Plano not paid the fee.

Although we recognize the significant role Baird played in the early days of the OTPP-Plano courtship, the services Baird rendered--which ended five months before the merger was consummated--do not supply Plano with a business purpose directly linked to the payment. In fact, we discern no benefit to Plano from the Baird payment, as distinguished from the merger itself. The record instead convinces us that the primary benefit from the Baird payment redounded to OTPP, an institutional investor with a strong interest in rewarding and developing productive relationships with companies that bring attractive acquisition candidates to its sight.

We thus find that Holding has failed to satisfy the first prong of the Lohrke analysis. See Bone v. Commissioner, 81 T.C.M. (CCH) at 1202.

2.      Baird Payment Was Not an Ordinary and Necessary Expense.

Although the failure to satisfy the first Lohrke prong suffices to support the disallowance of the claimed deduction, see Dietrick v. Commissioner, 55 T.C.M. (CCH) at 715, we will nevertheless address the second prong:  whether Plano's

**[\*13]** payment of the Baird fee was an ordinary and necessary expense of Plano's own business. Holding again fails to convince us.

We first note that neither party suggests that Plano's payment of the Baird fee was a product of Baird's failed attempt to find a suitor for Plano in 2010. To the contrary, the parties agree that the Baird payment came about because OTPP felt obligated to Baird for its legwork (in 2012) in identifying a potential acquisition for OTPP.[4]

The Baird payment thus is in the nature of a finder's fee that OTPP decided to bestow months after the fact. Were we looking at the business of an institutional investor like OTPP, we very well might conclude that a fee of this sort (if it were not a capital expenditure to acquire Plano) would be an ordinary and necessary expense that could be deducted. But we are not. Plano's business is manufacturing plastic goods, primarily storage items for outdoor sports. Holding fails to persuade us that such a payment qualifies as either ordinary or necessary in that line of business. Cf. <u>Capital Video Corp. v. Commissioner</u>, 311 F.3d 458, 465 (1st Cir. 2002) (explaining that the second <u>Lohrke</u> prong avoids "throwing open the floodgates of corporate deduction" by requiring that the

---

[4]Our holding today accordingly should not be seen to opine on whether a payment stemming from Baird's 2010 efforts on behalf of Plano would have been an ordinary and necessary expense of Plano's business.

**[\*14]** expense "arise in connection with the business activities" of the payor), aff'g

T.C. Memo. 2002-40.

Holding attempts to draw support from our decisions in Waring Prods.

Corp. v. Commissioner, 27 T.C. 921 (1957), and Square D Co. v. Commissioner,

121 T.C. 168 (2003). Neither of these fact-driven decisions supports the

conclusion that the Baird payment can be considered an ordinary and necessary

business expense of Plano.

Holding first points to our decision in Waring Prods., which stands for the

proposition that a legal obligation is not a sine qua non for deductibility under

section 162. See also Old Town Corp. v. Commissioner, 37 T.C. 845, 859 (1962);

Sakkis v. Commissioner, T.C. Memo. 2010-256, 100 T.C.M. (CCH) 459, 462

(2010). Our case, however, does not turn on the presence or absence of a legal

obligation, but on whether the Baird fee was an ordinary and necessary business

expense of Plano.

Holding next tries to bring this case into line with our prior decision in

Square D. In that case a corporate parent negotiated a loan commitment and

agreed to pay certain fees on behalf of its "to-be-organized subsidiary", which

ultimately received the loan proceeds and became the taxpayer at issue. Square D

Co. v. Commissioner, 121 T.C. at 172-174. The taxpayer subsequently took over

[*15] the payment of the costs (either directly or indirectly), which it sought to deduct. Id. at 193. We held under those facts that "where the loan acquisition costs were incurred on behalf of * * * [the taxpayer] and then paid by * * * [the taxpayer], it is appropriate to allow * * * [the taxpayer] to deduct the costs it paid." Id. at 201.

Holding contends our case resembles Square D and that Plano's payment should receive the same treatment. Specifically it argues that OTPP entered into the Baird agreement on Plano's behalf because Plano could not do so, in the same way that the corporate parent in Square D fronted the loan acquisition costs for its "to-be-organized subsidiary". Holding claims that the facts and circumstances of this case show Plano could not enter a fee agreement with Baird directly because of (1) Plano's retention of Harris Williams as financial advisor and (2) financial repercussions for its shareholders if the Baird payment were treated as a transaction expense.

Holding's argument runs counter to the parties' express stipulation that OTPP "entered into the letter agreement * * * because * * * [it] determined that Baird should be compensated for suggesting * * * [Plano] as a potential acquisition candidate and attempting to arrange an introductory meeting between representatives of OTPP Board and * * * [Plano]." Put more simply, OTPP acted

[*16] on its own behalf, not on behalf of Plano, in agreeing to the Baird payment, thus distinguishing this case from Square D, where the recipient of the benefit (the loan proceeds) was the taxpayer who made the payments and claimed the deduction.[5]

Nor does the record suggest that this case's resemblance to Square D is any more than skin deep. Holding argues that Plano wanted to, but could not, pay Baird directly, and so it enlisted OTPP to enter into an agreement on its behalf under which Plano ultimately paid. This contention strikes us as farfetched. Holding offers no support for the idea that Plano itself saw a need to compensate Baird for introductions provided several months before (as opposed to the payment of the transaction expenses incurred in Square D). And we are not persuaded that Plano was unable to pay Baird directly, as was the case for the to-be-organized subsidiary in Square D. Holding fails to show that the agreement for Harris Williams to serve as Plano's exclusive financial advisor would bar the payment of a finder's fee to Baird, which provided no financial advisory services

---

[5]Though we may disregard stipulations "where justice requires it if the evidence contrary to the stipulation is substantial or the stipulation is clearly contrary to facts disclosed by the record", Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989), Holding does not suggest that the stipulation should be ignored, and we see no basis to do so.

**[\*17]** at any point (again, according to the parties' stipulation) and whose role concluded well before the retention of Harris Williams.

We are likewise unconvinced of the purported negative financial repercussions for Plano's selling shareholders, which seem a matter of contractual semantics. Although expenditures treated as "transaction expenses" reduced Plano's purchase price to the detriment of its selling shareholders, Holding fails to persuade us that the payment to Baird here would fall into this category given that both parties agree that Baird provided no services in connection with the merger. At the end of the day the record is fully consistent with the conclusion that OTPP agreed to the Baird payment for its own reasons and on its own behalf. Square D is of no moment.[6]

---

[6]Holding also attempts to draw support from Priv. Ltr. Rul. 200953014, 2009 WL 5166573 (Dec. 31, 2009). Private letter rulings have no precedential value and merely represent the Commissioner's position as to a particular set of facts. See Bunney v. Commissioner, 114 T.C. 259, 261 n.2 (2000); First Chi. Corp. v. Commissioner, 96 T.C. 421, 443 (1991), aff'd, 135 F.3d 457 (7th Cir. 1998); see also sec. 6110(k)(3). Even if it had some force, it would not help Holding. Priv. Ltr. Rul. 200953014 addressed a factual situation similar to that in Square D, concluding that a company could deduct transaction costs arranged on its behalf when: "(i) the Company demonstrates that the services were rendered to Company, and/or on behalf of Company; and (ii) the fees associated with such services were paid for by Company, and/or reimbursed by Company." As explained above, Holding fails to establish that any services were rendered on Plano's behalf.

[*18] We accordingly find that Holding has failed to satisfy the second Lohrke prong as well.

### 3. Conclusion

Holding has failed to establish the applicability of the Lohrke exception. We accordingly hold that Plano's payment of the Baird fee was not deductible as an ordinary and necessary business expense of Plano. Given our determination, we do not address the amount of the deduction under the regulations and related administrative guidance.[7]

## II. Accuracy-Related Penalty

Holding also challenges the IRS' determination of the accuracy-related penalty under section 6662(a). Although the Commissioner normally bears the burden of production with respect to a taxpayer's liability for any penalty, see sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001), the burden remains on the taxpayer where the Commissioner has determined a penalty against a corporation, see Exelon Corp. v. Commissioner, 147 T.C. 230, 329 (2016), aff'd, 906 F.3d 513 (7th Cir. 2018); NT, Inc. v. Commissioner, 126 T.C. 191, 195 (2006). Holding filed an election to be treated as an association taxable as a

---

[7]As respondent has not argued that Plano's payment of the Baird fee amounted to a constructive dividend to OTPP, we forgo consideration of that issue too. See Square D Co. v. Commissioner, 121 T.C. 168, 200 n.27 (2003).

[*19] corporation, <u>see</u> secs. 301.7701-2 and 301.7701-3, Proced. & Admin. Regs., and we conclude that it bears the burden here.[8]

Pursuant to section 6662(a), a taxpayer may be liable for a penalty of 20% on an underpayment of tax attributable to a "substantial understatement of income tax." Sec. 6662(b)(2). An understatement is "substantial" in the case of a corporation (other than an S corporation) when it exceeds the lesser of (i) 10% of the tax required to be shown on the return for the taxable year (or, if greater, $10,000) or (ii) $10 million. Sec. 6662(d)(1)(B). Holding does not contest that there was a substantial understatement (within the meaning of the Code) but argues that the penalty should not apply because substantial authority supported the deduction.

As a general matter, an understatement is reduced to the extent that the taxpayer can prove, inter alia, that it had substantial authority for its treatment of the contested item. Sec. 6662(d)(2)(B)(i); <u>see also</u> <u>Higbee v. Commissioner</u>, 116

---

[8]In <u>Graev v. Commissioner</u>, 149 T.C. 485, 493 (2017), <u>supplementing and overruling in part</u> 147 T.C. 460 (2016), we held that the Commissioner's burden of production with respect to penalties includes a showing that he complied with the procedural requirements of sec. 6751(b)(1). We later clarified that <u>Graev</u> did not affect our previous holdings on the burdens relating to penalties asserted against corporations. See <u>Dynamo Holdings Ltd. P'ship v. Commissioner</u>, 150 T.C. 224 (2018). In any event, the record here includes a penalty approval form establishing respondent's compliance with sec. 6751(b)(1).

**[\*20]** T.C. at 448.  "The substantial authority standard is an objective standard involving an analysis of the law and application of the law to relevant facts."  Sec. 1.6662-4(d)(2), Income Tax Regs.

"There is substantial authority for the tax treatment of an item only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary treatment."  Id. subpara. (3)(i).  "The weight accorded an authority depends on its relevance and persuasiveness, and the type of document providing the authority."  Id. subdiv. (ii).  Court cases constitute one category of authority.  Id. subdiv. (iii).  Private letter rulings comprise another. Id.; see also Keenan v. Commissioner, T.C. Memo. 2018-60, at \*14.  An authority "having some facts in common with the tax treatment at issue is not particularly relevant if the authority is materially distinguishable on its facts, or is otherwise inapplicable".  Sec. 1.6662-4(d)(3)(ii), Income Tax Regs.; see also Antonides v. Commissioner, 91 T.C. 686, 702-703 (1988), aff'd, 893 F.2d 656 (4th Cir. 1990); Sampson v. Commissioner, T.C. Memo. 2013-212, at \*10.

Holding asserts that Waring Prods., Square D, and Priv. Ltr. Rul. 200953014, 2009 WL 5166573 (Dec. 31, 2009), constitute substantial authority that negates the penalty here.  But as outlined above, the facts in each of these authorities are materially distinguishable from the facts of this case.

**[\*21]** Although the transactions discussed in those authorities bear some surface similarities to those in this case, Plano received no services or other benefit from its payment of the Baird fee, and the payment was not an ordinary and necessary expense of its business. Holding has thus failed to establish that it had substantial authority in support of the treatment of the Baird fee in the 2012 consolidated tax return.[9]

III.   Conclusion

In sum, we hold that Plano's payment of the Baird fee was not deductible as an ordinary and necessary business expense of Plano. The IRS' deficiency and accuracy-related penalty determinations outlined in the 2012 notice of deficiency are sustained.

---

[9]Holding's brief notes that Plano's "CPA firm" prepared the 2012 tax return, which appears to be an undercooked attempt to satisfy the sec. 6664(c) reasonable cause and good-faith exception to the determined penalty. Claimed reliance on professional advice, however, "does not necessarily demonstrate reasonable cause and good faith." Sec. 1.6664-4(b)(1), Income Tax Regs. A taxpayer alleging good-faith reliance upon the advice of a professional must prove that (1) the advisor was a competent professional with sufficient expertise to justify the taxpayer's reliance, (2) the taxpayer provided necessary and accurate information to the advisor, and (3) the taxpayer actually relied in good faith on the advisor's judgment. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). Holding fails to show that Plano's CPA firm rendered any advice regarding the deduction at issue and plainly does not satisfy the requirements laid out in Neonatology.

[*22] To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.